UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TERESA C.,                                                      Case No. 3:19-cv-01268-AC

                         Plaintiff,                             OPINION AND ORDER

        v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

                         Defendant.

_____

ACOSTA, Magistrate Judge:

        Plaintiff Teresa C.[1] seeks judicial review of the Commissioner of Social Security's final

decision denying her application for a period of disability and disability insurance benefits, under

Title II of the Social Security Act, 42 U.S.C. §§ 401-403.   This court has jurisdiction pursuant to

42 U.S.C. § 405(g).   For the following reasons, the Commissioner's decision is affirmed.[2]

_____

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the
last name of the non-governmental party in this case.
[2] All parties have consented to allow a Magistrate Judge to enter final orders and judgment in
this case in accordance with 28 U.S.C. § 636(c).

Page 1  – OPINION AND ORDER

*Procedural Background*

On October 1, 2014, Plaintiff protectively filed an application for a period of disability and disability benefits, alleging disability beginning September 18, 2013, due to tremors, gastroparesis, recurrent emesis, weight loss, benign positional vertigo, chorea, uncontrollable involuntary movements, depression, nausea, vomiting, and chronic sinusitis.   Tr. Soc. Sec. Admin. R. ("Tr.") 95-96, ECF No. 16.   Plaintiff's claims were denied initially and upon reconsideration.   Plaintiff filed a request for a hearing before an administrative law judge ("ALJ").   The ALJ held a hearing on July 19, 2017, at which Plaintiff appeared with her attorney and testified.   A vocational expert, Francene Geers, also appeared and testified at the July 19, 2017 hearing. The ALJ held a supplemental hearing on March 23, 2018, at which an impartial medical expert, Nihar Umesh Shah, M.D., appeared and testified.   On June 6, 2018, the ALJ issued an unfavorable decision. The Appeals Council denied Plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Plaintiff was born in 1970, was forty-three years old on the alleged onset date of disability, and was forty-eight years old on the date of the ALJ's decision.   Tr. 27-28.   Plaintiff completed high school, some college courses, some automotive technical training, and has past relevant work as a cleaner, store laborer, and delivery driver.   Tr. 27.

*The ALJ's Decision*

The ALJ determined that Plaintiff meets the insured status requirements through March 31, 2019, and found at step one that she has not engaged in substantial gainful employment since her alleged onset date of September 18, 2013.   Tr. 16.   At step two, the ALJ determined that Plaintiff had the following severe impairments:   chronic constipation, trigeminal neuralgia, migraine headaches, bilateral carpal tunnel syndrome status post release, mild cervical osteoarthritis, and

depression.   Tr. 17.   At step three, the ALJ determined that Plaintiff's severe impairments did not meet or equal any listed impairment.   Tr. 19.   Reviewing all the evidence in the record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to lift and/or carry up to twenty pounds occasionally and ten pounds frequently, and can sit, stand, and walk each for six hours in an eight-hour workday, with the following additional limitations:   she can never climb ladders, ropes, or scaffolds; can frequently climb ramps and stairs, stoop crouch, kneel, and crawl, and frequently finger objects; she must have no more than occasional exposure to hazards, such as unprotected heights and large moving equipment; she can understand, remember, and apply information to complete tasks that require a GED Reasoning Level of 2; and she must work in a setting with ready access to a bathroom.   Tr. 21-21.

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. Tr. 27.   At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including such representative occupations as marker, photocopy machine operator, and collator operator.   Tr. 28.   Therefore, the ALJ found that Plaintiff was not disabled from September 18, 2013, through the date of the decision and denied Plaintiff's application for disability benefits.   Tr. 29.

*Issues on Review*

Plaintiff argues that the ALJ committed the following errors:   (1) improperly evaluated her subjective symptom testimony; (2) improperly evaluated the opinions of the treating and examining physicians; and (3) the RFC fails to account for the limitations caused by her migraine headaches.

\ \ \ \ \

\ \ \ \ \

Page 3  – OPINION AND ORDER

*Standard of Review*

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation and citation omitted); *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020); *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence exists, the court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1009. "'If the evidence can reasonably support either affirming or reversing,' the reviewing court 'may not substitute its judgment' for that of the Commissioner." *Gutierrez v. Comm'r Soc. Sec. Admin.*, 740 F.3d 519, 523 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)).

*Discussion*

I.    The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptom Testimony

A.    *Standards*

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. *Trevizo*, 871 F.3d at 678; 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage, absent affirmative evidence that the claimant is malingering, the ALJ must provide clear and

Page 4  – OPINION AND ORDER

convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Clear and convincing reasons for rejecting a claimant's subjective symptom testimony include "conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013); *Tommasetti*, 533 F.3d at 1039.

B.    *Analysis*

As the ALJ accurately described, Plaintiff has a "complex medical history that is dominated by complaints of abdominal pain, chronic constipation, nausea, vomiting, diarrhea, weight loss, fatigue, and migraine headaches." Tr. 17. At the hearing, Plaintiff testified that she could no longer work due to her frequent bowel movements, recurrent vomiting, tremors, and weakness. She complained of intermittent constipation and frequent bowel movements with a high degree of variability. Tr. 70. She testified that she vomits four or five times per week. Tr. 69. She described having difficulty with her hands, and that she has trouble dressing herself. Tr. 72. She stated that the most she can frequently lift and carry is two pounds, that she can sit for thirty minutes before needing to change position, and can stand and walk for five minutes. Tr. 73. She testified that she naps every day and has difficulty sleeping due to pain and numbness. Tr. 73-74.

Page 5 – OPINION AND ORDER

She estimated her pain at typically a seven out of ten.   Tr. 75.   She testified that she has lost forty pounds due to her gastrointestinal issues, has difficulty with short-term memory loss, and experiences migraine headaches four-to-five times per week.   Tr. 79-80.

Plaintiff stated that she was prescribed oxcarbazepine, lisinopril, reglan, gabapentin, and folic acid for her impairments.   Tr. 65.   She testified that her medications are effective because they have lessened the pain that she feels, but they make her tired.   Tr. 65.

Plaintiff described that she formerly worked as a service worker for a mass transit provider fueling, sweeping, mopping, and washing buses.   Tr. 60.   She stated that part of her job included filling oil and antifreeze levels in the buses, and that doing so involved moving large fifty-five gallon drums of oil and antifreeze by hand or with a handtruck.   Tr. 60-61.   She testified that she was "medically terminated" from that job because she could not attend to work on a reliable basis. Tr. 62.   She also described working as a counter parts person in a parts department for an automotive dealership.   Tr. 62.   She testified that she managed the routes for the deliveries of parts and occasionally delivered parts when they were needed quickly.   Tr. 64.

Plaintiff testified that she lives in a home with roommates and that she pays the mortgage, and her roommates perform most of the household chores and yardwork.   Tr. 66.   She stated that she does her own grocery shopping once a week and occasionally does her own laundry.   Tr. 66. She testified that approximately three times per week she drives herself to her own medical appointments, to the store, and to visit family.   Tr. 67.   She stated that she had helped her brother and father with their nursery businesses, but has been unable to do so since 2013 or 2014.   Tr. 68.

In this case, there is no evidence of malingering and the ALJ was required to provide specific, clear, and convincing reasons for discrediting Plaintiff's symptom testimony.   Here, the ALJ identified three reasons:   (1) Plaintiff's daily activities were inconsistent with her alleged

symptoms; (2) her symptoms improved with medication; and (3) her allegations were not supported by the objective medical evidence of record.  Notably, Plaintiff challenges only the ALJ's assessment of her work history in the credibility determination.  After careful examination, the court finds that the ALJ's has provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

### 1.    activities of daily living

Activities of daily living may provide a basis for discounting a claimant's subjective symptoms if they contradict her testimony or meet the threshold for transferable work skills. *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012); *superseded by regulation on other grounds as stated in Schuyler v. Saul*, 813 F. App'x 341, 342 (9th Cir. 2020).  However, a claimant does not need to be utterly incapacitated to receive disability benefits, and a claimant's ability to complete certain routine activities is insufficient to discount subjective symptom testimony. *Molina,* 674 F.3d at 1112-13 (observing that a "claimant need not vegetate in a dark room in order to be eligible for benefits" (quotation marks omitted)); *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004) ("One does not need to be 'utterly incapacitated' in order to be disabled.").

The ALJ found Plaintiff's allegations of total disability undermined by her ability to drive herself two-to-three times per week, and her ability to attend family gatherings.  Tr. 22.  At the hearing, Plaintiff testified that she attends "a lot of family gatherings when I'm able to."  Tr. 67. She stated that her primary impediment to working is her alternating periods of constipation and diarrhea, and intermittent periods of vomiting.  Contrary to the ALJ's findings, Plaintiff's ability to perform some household chores and attend family gatherings during asymptomatic periods is not inconsistent with her allegations of disability. *Ghanim*, 763 F.3d at 1164 (holding claimant

did not purport to be unable to perform all basic activities, thus ALJ erred in discounting testimony).

The ALJ reasonably could infer, however, that Plaintiff's ability to shop, drive herself to appointments, and remain socially active when not bothered by diarrhea and vomiting are inconsistent with her hearing testimony of being able to lift only two pounds or walk for five minutes.   The ALJ also found that Plaintiff's reports of being so weak that she can only wear pull-on clothing and needing help from roommates inconsistent with the record.   Tr. 22.   The ALJ found this extreme level of incapacity unsupported by the medical record, and specifically undermined by Plaintiff's report to an examining physician, and thus discounted her testimony on this basis.   Tr. 22.

The ALJ's finding in this regard is wholly supported by substantial evidence.   As the ALJ correctly observed, during a September 19, 2017 neurocognitive evaluation with Paul S. Stoltzfus, Psy. D., Plaintiff described her daily activities as including spending time with family, reading, gardening, and walking daily.   Tr. 887.   Plaintiff reported her activity level was health-dependent, but the ALJ reasonably could find her allegations of extreme incapacity inconsistent with her description of daily activities to Dr. Stoltzfus on this basis.   Moreover, Plaintiff does not challenge the ALJ's assessment of this evidence.   Therefore, the court concludes the ALJ has provided a specific, clear, and convincing reason for discounting Plaintiff's testimony.   *Molina, 674 F.3d at 1112-13* (finding ALJ reasonably concluded that claimant's allegations of total disability were undermined by daily activities, despite having some difficulty functioning).

2.    improvement with medication

In the decision, the ALJ noted that Plaintiff alleged she is unable to sustain work because she suffers from multiple painful migraines per week, which require her lie down in a dark room.

Tr. 22.   An ALJ "may consider . . . the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication" when assessing how much weight to give a claimant's symptom testimony.   *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995); *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling" (citations omitted)).   The ALJ found Plaintiff's report of disabling migraines undermined by her reports to providers that her migraines had improved on medication.   Tr. 23.   The ALJ discussed Plaintiff's migraines and trigeminal neuralgia at length.   The ALJ discussed that in January 2016, Plaintiff was prescribed oxcarbazepine for trigeminal neuralgia and her migraines, and that her treatment providers added gabapentin for better control, with Zomig for breakthrough migraines.   Tr. 17, 23, 756.   The ALJ noted that two months later, Plaintiff reported the combination of oxcarbazepine and gabapentin was very effective, such that she rarely needed to use Zomig.   Tr. 23, 753.   As the ALJ accurately noted, in January 2017, Plaintiff reported her trigeminal neuralgia was "minimally bothersome." Tr. 806.

The ALJ's findings are wholly supported by substantial evidence in the record.   Her migraines and trigeminal neuralgia responded well to medication (Tr. 1267, 1279), and her reported depression improved after beginning treatment with medication.   Tr. 23.   Again, the ALJ's findings in this regard are fully supported by substantial evidence and reasonable inferences drawn from the record, and unchallenged by Plaintiff.   Accordingly, the court finds that ALJ's second rationale is a specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

       3.      inconsistencies with medical evidence

An ALJ may consider objective medical evidence in evaluating a claimant's subjective

symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006); *McCloud v. Saul*, 818 F. App'x 730, 732 (9th Cir. 2020) (finding ALJ properly rejected subjective symptom testimony based in part on lack of objective medical evidence).

The ALJ discounted Plaintiff's testimony because it was inconsistent with the objective medical evidence, observing that Plaintiff "has a lot of complaints with minimal objective findings corresponding to those complaints." Tr. 22. The ALJ found that Plaintiff's allegations of gastroparesis were undermined by the results of a negative January 2017 gastric emptying study. The ALJ discussed that Plaintiff underwent a similar study, which revealed that she suffers from slowed emptying consistent with constipation. Tr. 22, 840, 841. Additionally, the ALJ found Plaintiff's testimony that she suffers from fifteen episodes of loose stools per day inconsistent with her reports to her physicians, reflecting complaints of only up to ten episodes. Tr. 22, 783, 907, 1215. The ALJ's findings are wholly supported by substantial evidence in the record. As the ALJ accurately observed, the medical record reflects that Plaintiff reported variable episodes of constipation and diarrhea, but do not support Plaintiff's reported level or that they were accompanied by hygienic accidents.

The ALJ also discounted Plaintiff's testimony about weight loss. After noting that that Plaintiff lost thirty-two pounds between March and November of 2016, the ALJ found Plaintiff's weight loss "not [] severe" because her body mass index remained within a normal range and averaged four pounds lost per month. Tr. 22. And, the ALJ observed that Plaintiff's weight remained stable after November 2016. Further, the ALJ found that Plaintiff's allegations of frequent vomiting undermined by her stable weight and by her reports to her treating physician that her vomiting had become less frequent. Upon careful examination, the court concludes that

Page 10  – OPINION AND ORDER

the ALJ's findings are supported by substantial evidence and are a reasonable interpretation of the record.

The court notes that Plaintiff's weight loss is well documented in the record, as the ALJ accurately noted, (*see, e.g.,* Tr. 783, 798, 801, 824), but disagrees with the ALJ's characterization of Plaintiff's thirty-two-pound weight loss as "gradual" and not "alarmingly fast."  Tr. 22.  An unexplained, unintentional weight loss of more than thirty pounds would be distressing for many people even if occurring over several months, and the record reflects that it clearly was distressing for Plaintiff.  Tr. 797.  Nevertheless, the court concludes the ALJ could reasonably conclude that Plaintiff's complaints of excessive vomiting are not fully supported by the record.  Plaintiff's weight loss stabilized as of late 2016, and the ALJ's finding that Plaintiff's complaints of vomiting were somewhat less frequent are supported by the record.  Plaintiff does not challenge the ALJ's finding in this regard, however, and even if the court could conclude differently, the ALJ's conclusion is reasonably supported by the substantial evidence is the record and must be upheld. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (providing that ALJ's decision must be upheld "'where evidence is susceptible to more than one rational interpretation'" (quoting *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007)).  Accordingly, the court finds that the ALJ's third reason supplies another specific, clear, and convincing reason to discount Plaintiff's subjective symptom testimony.

Finally, the ALJ discounted Plaintiff's subjective complaints because she could no longer perform heavy work, but that she failed to look for alternative lighter work.  Tr. 22.  Plaintiff argues that the ALJ erred in evaluating her subjective symptom testimony by failing to consider her "stellar work history."  (Pl.'s Br. at 33, ECF No. 17.)  Plaintiff's argument is insufficient to overcome the ALJ's reasons for discounting her subjective symptom testimony.  Even if the ALJ

Page 11  – OPINION AND ORDER

erred in discounting Plaintiff's testimony in this regard, the ALJ has provided several other reasons that amount to specific, clear, and convincing support, backed by substantial evidence, for doing so.   Therefore, any error in failing to consider Plaintiff's work history or for failing to look for other work is harmless.   *Baston v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195-97 (9th Cir. 2004) (holding error in evaluating credibility is harmless where the error "does not negate the validity of the ALJ's ultimate conclusion").

II.    The ALJ Did Not Err in Evaluating the Medical Opinion Evidence

As noted above, Plaintiff has a complex medical history, with years' long complaints of intermittent abdominal pain, chronic constipation, diarrhea, vomiting, weight loss, fatigue, tremors, and migraine headaches.   But extensive clinical testing has not definitively identified a specific diagnosis for Plaintiff's abdominal ailments or source of her tremor.   She alleges that the ALJ erred by failing to give her treating physicians controlling weight by properly considering the factors in 20 C.F.R. § 404.1527(c), including the examining relationship, treatment relationship, supportability, consistency, and specialization.   The Commissioner responds that that ALJ reasonably weighed the conflicting medical evidence, and that the ALJ's decision should not be disturbed.

A.    *Standards*

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.   *Carmickle*, 533 F.3d at 1164.   In general, the opinion of a treating physician is given more weight than the opinion of an examining physician, and the opinion of an examining physician is afforded more weight than the opinion of a nonexamining physician. *Ghanim*, 763 F.3d at 1160; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); 20 C.F.R. § 404.1527. "If a treating physician's opinion is well-supported by medically acceptable clinical and laboratory

Page 12  – OPINION AND ORDER

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Orn*, 495 F.3d at 631 (internal quotations omitted) (alterations in original); *Trevizo*, 871 F.3d at 675 (same); 20 C.F.R. § 404.1527(c).[3] "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." *Trevizo*, 871 F.3d at 675; 20 C.F.R. § 404.1527(c)(2)-(6).

To reject the uncontroverted opinion of a treating or examining physician, the ALJ must present clear and convincing reasons. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If a treating or examining doctor's opinion is contradicted by another doctor's opinion, it may be rejected by specific and legitimate reasons. *Trevizo*, 871 F.3d at 675; *Garrison*, 759 F.3d at 1012. To meet this burden, the ALJ must set out a "detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). When evaluating conflicting opinions, an ALJ is not required to accept an opinion that is not supported by clinical findings, or is brief or conclusory. *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

\ \ \ \ \

---

[3] For all claims filed on or after March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1520c (not § 404.1527) govern. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c. Thus, the new regulations eliminate the term "treating source," as well as what is customarily known as the treating source or treating physician rule. *See* 20 C.F.R. § 404.1520c. In this case, Plaintiff filed her claim for benefits October 2014, well before March 27, 2017. *See* 20 C.F.R. § 404.614 (defining when an application for benefits is considered filed). Thus, the court analyzes Plaintiff's claim utilizing § 404.1527 (providing the rules for evaluating opinion evidence for claims filed prior to March 27, 2017).

B.    *Keith A. White, M.D.*

Dr. White was Plaintiff's primary care physician and treated Plaintiff approximately twenty times between 2013 and 2018, and he opined multiple times that Plaintiff is disabled.   In a March 27, 2017 treatment note, Dr. White observed that Plaintiff continued to suffer from persistent abdominal pain, accompanied by constipation, diarrhea, and weight loss, and that she is "completely disabled."   Tr. 806.   In a November 21, 2017 medical source statement for physical impairments, Dr. White opined that Plaintiff is "unfit for any kind of employment."   Tr. 927.   In that statement, Dr. White indicated he had been Plaintiff's treating physician since 2012, and that Plaintiff has diagnoses of tic douloureaux, [4] intestinal malabsorption, hypovitaminosis, malnutrition, excessive weight loss, migraine headaches, COPD, mild chronic nausea, vomiting, constipation alternating with diarrhea, and major depressive disorder.   Tr. 927.   Dr. White stated that Plaintiff's prognosis was poor for recovery and estimated she would be absent from work more than twice per month.   Tr. 927-28.   In that statement, Dr. White did not provide specific functional limitations, stating that a formal functional work capacity test would be necessary to assess those limitations.   Tr. 927.

In a November 21, 2017 medical source statement for mental impairments, Dr. White opined that Plaintiff is unable to maintain competitive employment due to her major depressive disorder.   Tr. 932.   In the check-the-box form, Dr. White opined that the Plaintiff would be unable to function in numerous categories:   remembering work-like procedures, maintaining attention, maintaining regular attendance, working with others without being distracted, complete

---

[4] Trigeminal neuralgia is also known as tic douloureux.   https://www.mayoclinic.org/diseases-conditions/trigeminal-neuralgia/symptoms-causes/syc-20353344 (last visited November 21, 2020).

Page 14  – OPINION AND ORDER

a normal workday without distractions from psychological symptoms, working at a consistent pace, responding appropriately to criticism from supervisors, getting along with co-workers, handling normal work stresses, handling stress of semiskilled and skilled work.   Tr. 931.   Dr. White also opined that Plaintiff would be absent from work due to her major depressive disorder more than twice per month.   Tr. 932.

On January 8, 2018, Dr. White authored a letter in which he opined that Plaintiff "is unsuitable for substantial gainful activity."   Tr. 1253.   Dr. White explained that Plaintiff's most limiting condition is her gastroparesis, which results in alternating bouts of constipation and uncontrollable diarrhea.   Tr. 1253.   Dr. White explained that this has resulted in a thirty-two-pound weight loss and vitamin deficiency.   Tr. 1253.   Dr. White indicated that Plaintiff's vitamin deficiency showed malabsorption and malnutrition, which has resulted in muscle wasting and weakness.   Tr. 1253.   Dr. White noted that Plaintiff describes uncontrollable diarrhea with up to fifteen loose stools, which required her to wear a diaper.   Tr. 1253.   Dr. While explained that despite his efforts and those of Plaintiff's gastroenterologist, they have not been able to control her gastrointestinal issues.   Dr. White further explained that Plaintiff suffers from tic douloureux, which causes severe unilateral facial pain, for which Plaintiff takes oxcarbazepine and gabapentin, with variable success.   Additionally, Dr. White explained that Plaintiff has migraine headaches, which are poorly controlled and episodically disabling.   Tr. 1253.   He described that with the help of the neurologist, Plaintiff has improved.   According to Dr. White, Plaintiff's ability to perform tasks is severely limited by her bouts of diarrhea that may last for a few days and her intermittent migraine headaches and tic douloureux.   Tr. 1254.

In the decision, the ALJ discussed Dr. White's opinion that Plaintiff had "poor ability" in areas of "cognitive and social functioning" and that she would be absent more than twice per

Page 15  – OPINION AND ORDER

month, and that she could not hold any job.   Tr. 25, 930-32.   The ALJ gave Dr. White's medical source statement concerning Plaintiff's mental health impairments "limited weight," because it was inconsistent with other medical evidence and the opinions of examining physicians Thomas W. L. Potter, Ph.D., and Paul S. Stoltzfus, Psy.D.   Tr. 24-25.   Because Dr. White's opinion was contradicted, the ALJ was required to provide specific and legitimate reasons for discounting it. The ALJ's analysis readily satisfies this standard.

The ALJ noted that Dr. White's Dr. White's own treatment notes undermined his check-the-box opinion that Plaintiff was severely limited by her depression.   The ALJ explained that Plaintiff complained of depression for two years, but refused medication and did not undertake counseling.   Tr. 23.   The ALJ also noted that after Plaintiff began medication in December 2017, Dr. White's treatment notes showed that Plaintiff's mood improved, and he assessed her depression as mild to moderate dysthemia.   Tr. 23, 1206.   As the ALJ correctly observed, Plaintiff reported continued improvement of her depression in January through March 2018, through medication.   Tr. 1267, 1279.   Based on Plaintiff's positive response to the medication, the ALJ reasonably could discount Dr. White's opinion that Plaintiff's mental health symptoms totally disabled her.   Therefore, the court concludes that the ALJ provided a specific and legitimate reason, backed by substantial evidence, for discounting Dr. White's 2017 check-the-box opinion concerning Plaintiff's mental health limitations.   *See Ford*, 950 F.3d at 1155 (finding ALJ properly discounted physician opinion when contained in check-off report that failed to provide support for limitations).

Next, the ALJ gave Dr. White's 2017 medical source statement concerning Plaintiff's physical limitations "limited weight" because it was inconsistent with the medical evidence of record.   Tr. 25.   The ALJ noted that Dr. White declined to provide any functional limitations,

Page 16  – OPINION AND ORDER

noting that Plaintiff would need a formal work capacity assessment, that Plaintiff's prognosis for recovery was poor, that Plaintiff has bad days and worse day, and that she would be absent from work more than two times per month.   Tr. 25, 922.   Although the ALJ did not provide a detailed rejection of Dr. White's November 2017 medical source statement concerning Plaintiff's physical limitations, the ALJ did discuss those assessed limitations in conjunction with Dr. White's 2018 opinion.   *Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (holding ALJ must discuss and evaluate evidence supporting decision, but need do so under specific heading).

The ALJ declined to give Dr. White's 2018 opinion letter "controlling weight," instead affording it "moderate weight" because of "errors, exaggerations, and discrepancies" between Plaintiff's statements to Dr. White and his opinion.   Tr. 25.   Dr. White's opinions concerning Plaintiff's physical limitations are contradicted by agency physicians, Drs. Wiggins and Berner; the testifying medical expert, Dr. Shah; and examining physician, Cory Maughan, D.O.   Tr. 41-52, 99-101, 112-14, 603.   Therefore, the ALJ was required to provide specific and legitimate reasons backed by substantial evidence for discounting Dr. White's opinions.

The ALJ discounted Dr. White's opinion of Plaintiff's physical impairments based on discrepancies between his opinion and his treatment notes.   A conflict between treatment notes and a treating provider's opinion may be an adequate reason to discount the opinion.   *Ghanim*, 763 F.3d at 1161.   The ALJ detailed that Dr. White's treatment records do not reflect that Plaintiff reported fifteen bowel movements per day; Dr. White's treatment notes instead reflect that Plaintiff reported at most ten episodes.   Tr. 907 (discussing six to ten bowel movements per day).   Dr. White's notes make no mention of any muscle wasting due to malabsorption syndrome during his lengthy treatment of Plaintiff.   Tr. 25.   Although Dr. White's notes occasionally reflect weakness, they also uniformly reflect normal gait and that her extremities were normal.   Tr. 25,

Page 17  – OPINION AND ORDER

797, 803, 808, 813, 825, 899, 1205, 1212, 1217-18, 1223, 1228-29, 1234, 1270-71, 1276, 1282. And Dr. White's opinion that treatment of Plaintiff's migraines and tic douloureux had variable success is inconsistent with his treatment notes: as noted above, Dr. White's treatment notes reflect that Plaintiff's migraines and tic douloureux improved on medication. Therefore, upon a careful review of Dr. White's voluminous medical records, the court concludes that ALJ's findings are supported by substantial evidence in the record, and the ALJ reasonably discounted his opinion on this basis.

The ALJ also discounted Dr. White's opinion of because it contains a gastroparesis diagnosis, which the ALJ found unwarranted following a normal gastric emptying study in 2017. Again, the ALJ's finding is supported by substantial evidence in the record. Tr. 841, 843, 864, 907. The ALJ rationally determined, based on the discrepancy between the medical testing and this opinion, that Dr. White's opinion was not entitled to full weight. Although Plaintiff suggests an alternative interpretation of the evidence, the ALJ's interpretation is reasonable and will not be disturbed. *Ford*, 950 F.3d at 1156 (holding that "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation") (citing *Tommasetti*, 533 F.3d at 1038). Accordingly, the ALJ's rationale is a specific and legitimate basis for not giving Dr. White's opinion controlling weight.

The court disagrees with Plaintiff's assertion that the ALJ failed to consider the factors in 20 C.F.R. § 404.1527(c). The ALJ acknowledged and discussed Dr. White's role as Plaintiff's treating provider and that the record contains his treating records dating back to 2015. Additionally, the ALJ thoroughly and accurately discussed Dr. White's opinion, and its supportability and consistency with other record evidence. The ALJ provided reasoning

consistent with § 404.1527 for giving Dr. White's opinion less than controlling weight, and for crediting the opinions of others. The ALJ did not err in evaluating Dr. White's opinion.

### C.    Laura Ouellette, M.D.

Dr. Ouellette, one of Plaintiff's treating physicians, treated her at least twenty times between 2011 and 2014. Plaintiff regularly sought treatment for tremor, abdominal pain, vomiting, and alternating constipation and diarrhea. *E.g.,* Tr. 384, 409, 423, 426, 443. On November 5, 2013, Dr. Ouellette provided a note for Plaintiff's employer indicating Plaintiff's ongoing illness had worsened, she was unable to return to work, and she required further evaluation. Tr. 1170. On November 23, 2013, Dr. Ouellette completed paperwork for Plaintiff's long-term disability insurance in which she opined that Plaintiff had been unable to perform her job functions since September 17, 2013, and that she should remain off work for sixty days. Tr. 1172-73. On March 5, 2014, Dr. Ouellette opined that Plaintiff is "completely disabled with respect to her prior job, and would have difficulty with any kind of gainful employment at this time." Tr. 358. That same day, Dr. Ouellette provided a medical source statement for Plaintiff's long-term disability insurance carrier listing diagnoses of abdominal pain, emesis, tremor, and gastroparesis. Tr. 356. Dr. Ouellette opined that Plaintiff had severe limitations and could not perform minimal, sedentary activity, had limited ability to walk and stand, and could not lift more than twenty pounds. Tr. 357. Dr. Ouellette also opined that Plaintiff had moderate limitations in her interpersonal relations because of stress, and that she did not plan to return to work. Tr. 357.

The ALJ gave Dr. Ouellette's opinion, as provided on the insurance forms, "limited weight" because the "degree of limitation suggested" was inconsistent with the medical evidence of record, and because Dr. Ouellette relied on Plaintiff's subjective symptom reports rather than

Page 19  – OPINION AND ORDER

objective evidence when "identifying diagnoses and functional limitations." Tr. 26. Dr. Ouellette's opinion that Plaintiff was unable to maintain competitive employment was contradicted by those of Drs. Wiggins, Berner, and Shah. Tr. 3, 41-52, 99-101, 112-14. Thus, the ALJ was required to provide specific and legitimate reasons backed by substantial evidence for discounting Dr. Ouellette's opinion. The ALJ reasoning satisfies this standard.

"A physician's opinion can be discredited based on contradictions between the opinion and the physician's own notes." *Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017) (citing *Bayliss*, 427 F.3d at 1216). As the ALJ discussed, a normal gastric emptying study undermined Dr. Ouellette's diagnosis of gastroparesis. Tr. 843. Moreover, the ALJ's reasoning is supported by substantial evidence when viewed in the context of the whole record. The ALJ thoroughly discussed Dr. Ouellette's treatment notes at step two in finding that Plaintiff's tremor was an intentional tremor secondary to her habits and anxiety, or perhaps a side effect of medication. Tr. 18. And, the record reveals that neurological testing for her tremor was normal and, as the ALJ discussed, Plaintiff's tremor improved with medication. Tr. 18, 585. Although not specifically addressed under the RFC heading, the ALJ clearly reviewed and considered all of Dr. Ouellette's records and found that the severity of Dr. Ouellette's assessed limitations was not supported by objective evidence or clinical findings. *See Lewis*, 236 F.3d at 513 (holding the ALJ is required to "discuss and evaluate the evidence that supports his or her conclusion; it does not specify that the ALJ must do so under the heading 'Findings.'"); *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir 2013) (same).

Furthermore, as the ALJ accurately indicated, Dr. Ouellette's assessed limitation that Plaintiff was unable to perform minimal sedentary activity is not supported by her treatment notes. A review of Dr. Ouellette's treatment notes reveals very few limitations other than those associated

with Plaintiff's tremor.    Therefore, the court concludes that the ALJ's evaluation of Dr. Ouellette's opinion is backed by substantial evidence, and the incongruity between Dr. Ouellette's opinion and the medical record provides a specific and legitimate basis for discounting it. *Tommasetti*, 533 F.3d at 1041.

Next, the ALJ found that Dr. Ouellette's opinion appeared based on Plaintiff's subjective complaints, a finding Plaintiff does not challenge.    "[A] doctor's work restrictions based on a claimant's subjective statements about symptoms are reasonably discounted when the ALJ finds the claimant less than fully credible."    *Murray v. Comm'r Soc. Sec. Admin.*, 226 F. Supp. 3d 1122, 1135 (D. Or. 2017); *Bray*, 554 F.3d at 1228 (9th Cir. 2009); *Batson*, 359 F.3d at 1195.    Because of the lack of objective medical evidence and clinical findings to support the severity of the limitations Dr. Ouellette described, the ALJ reasonably could have inferred the opinion was premised on Plaintiff's subjective complaints.    *Crowley v. Comm'r Soc. Sec. Admin.*, No. CV-18-0561-TUC-BGM, 2020 WL 2782569 (D. Ariz. May 29, 2020) (stating that ALJ could discount physician's opinion premised on properly discounted subjective complaints).    For all these reasons, the ALJ has provided specific and legitimate reasons for discounting Dr. Ouellette's opinion.

Contrary to Plaintiff's contention, the ALJ considered the factors in 20 C.F.R. § 404.1527(c), including that Dr. Ouellette was Plaintiff's treating physician and the consistency and supportability of her opinion with the record as a whole.    Therefore, the court concludes that the ALJ did not err in evaluating Dr. Ouellette's opinion.

D.    *Shelly Svoboda M.D., Julie Solomon, FNP, Mary Placek, M.D.*

Dr. Svoboda is a neurologist that treated Plaintiff two times in 2014 for her tremor and two times for her migraines in 2016.    Tr. 543, 548, 753, 757.    On April 18, 2014. Dr. Svoboda opined

Page 21  – OPINION AND ORDER

that Plaintiff could not continue working because she was unable to "coordinate her hands to manage keyboarding, fine movements, [or] carrying/lifting." Tr. 543. Dr. Svoboda completed a medical source statement for Plaintiff's long-term disability, dated April 18, 2014, in which she opined that Plaintiff was "unable to work." Tr. 551. Ms. Solomon is a nurse practitioner working with Dr. Svoboda and treated Plaintiff two times. Tr. 540, 544. In a February 18, 2014 medical statement pertaining to Plaintiff's long-term disability, Ms. Solomon indicated that Plaintiff was diagnosed with chorea, and that she had symptoms of clumsiness, tremor and involuntary movements. Tr. 547. Ms. Solomon indicated that she had been treating Plaintiff for two months, that medications had not yet been successful, and that she recommended Plaintiff stop working. Tr. 547. In a June 2, 2014 treatment note, Dr. Solomon observed that Plaintiff continues to have a head tremor, tongue tremor, resting kick tremor in her left leg, and resting tremor in her hands bilaterally. Tr. 541.

Dr. Placek is an examining physician that treated Plaintiff on November 11, 2014. Tr. 683. Dr. Placek's treatment note indicates that Plaintiff was following up on her medical care for a functional tremor and that she needed disability paperwork completed. Tr. 683. Dr. Placek indicated that Plaintiff reported improvement with sleep and tremor symptoms on amitriptyline. Tr. 683. Plaintiff reported to Dr. Placek at that time that she was unable to perform her duties for manual labor as a CDL driver and mechanic. Tr. 683. Dr. Placek observed that Plaintiff's functional tremor waxed and waned throughout their discussion. Tr. 683.

On December 22, 2014, Dr. Placek completed a form for Plaintiff's long-term disability carrier, and indicated that Dr. Placek was "unable to say with certainty" the extent of Plaintiff's disability, and opined that Plaintiff was able to perform seven-to-eight hours of light activity (lifting and carrying ten pounds frequently and twenty pounds occasionally) and one-to-two hours

Page 22  – OPINION AND ORDER

of medium activity (lifting and carrying twenty-five pounds frequently and fifty pounds occasionally). Tr. 682. Additionally, Dr. Placek stated that Plaintiff was able to engage in only limited stress situations and engage in limited interpersonal relations. Tr. 682.

In the decision, the ALJ discussed the opinions of Drs. Svoboda, Placek, and Ms. Solomon in conjunction with those of Dr. Ouellette as they all were provided for Plaintiff's long-term disability carrier and gave the opinions "limited weight." Tr. 26. Because the opinions were contradicted, the ALJ was required to provide a specific and legitimate rationale for discounting them. The ALJ's analysis meets this standard.

The ALJ found the degree of limitation in Dr. Svoboda and Solomon's opinions is inconsistent with the medical evidence of record and referenced earlier discussions of the evidence. An ALJ may reject a treating or examining physician's opinion when it "is not well-supported" or "is inconsistent with other substantial evidence in the record." *Orn*, 495 F.3d at 631; *Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings") (internal citation omitted).

As noted above, the ALJ thoroughly discussed the Plaintiff's tremor at step two and found it to be nonsevere, and those findings are backed by substantial evidence and are a reasonable interpretation of the record. The ALJ observed that Dr. Svoboda and Ms. Solomon did not include any functional limitations in their early 2014 opinions. "An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion." *Ford*, 950 F.3d at 1155. As the Ninth Circuit recently observed in *Ford*, an ALJ may not reject an opinion simply because it is expressed as a check-the-box questionnaire, but the ALJ may reject those opinions that fail to provide an

Page 23 – OPINION AND ORDER

explanation for their conclusions.  *Id.* (citing *Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017)).  Here, as the ALJ correctly noted, little objective support or explanation existed for Dr. Svoboda's and Ms. Solomon's respective long-term disability insurance opinions.  As the ALJ discussed, by December 2014, Dr. Placek noted that Plaintiff's tremor was improved on medication and that she was "uncertain" of the degree of her disability and indicated that Plaintiff could perform at least light work with moderate cognitive and social limitations.   Tr. 26, 682-83. As the ALJ found, Plaintiff's tremor continued to improve on medication into 2016, such that it was noted to be "minimally bothersome."  Tr. 18.   After a careful review, the court concludes that the ALJ provided specific and legitimate reasons backed by substantial evidence for discounting the medical source statements of examining physicians Drs. Svoboda and Placek, and for Ms. Solomon's opinion.

E.     *Paul S. Stoltzfus, Psy. D.*

On September 19, 2017, Dr. Stoltzfus performed a neurocognitive evaluation of Plaintiff. Tr. 884.  Dr. Stoltzfus conducted a clinical interview; reviewed documents; conducted a mental status examination; and performed objective testing for intellectual functioning, executive function, memory, learning, and speech and language functioning.  Tr. 884-91.  Dr. Stoltzfus noted that during testing, Plaintiff experienced headaches, and that "the response to headaches of weeping and excessive apology during the memory portion of the test compromised her ability to function well, and clearly compromised test scores."  Tr. 888.  Aside from invalid memory scores, measures of intellect, reasoning, comprehension, and reading were average.  Tr. 891.  Dr. Stoltzfus diagnosed major depressive disorder, cerebella tremor, peripheral neuropathy, malabsorption, cholecystectomy, loss of weight, episodic gastro paresis, chronic and severe headaches, and fatigue with insomnia.  Tr. 891.  Dr. Stoltzfus opined that Plaintiff had no

limitations in her ability to understand, remember, and carry out simple instructions, and was moderately limited in her ability to understand, remember and carry out complex instructions.    Tr. 894.    Dr. Stoltzfus opined that "[w]hen free from headaches, [Plaintiff] has no cognitive difficulty. During episode headaches, occurring at random, multiple times each day, she is unable to perform complex tasks.    Tr. 894.    Dr. Stoltzfus also opined that Plaintiff is markedly limited in her ability to interact with the public, with supervisors, with co-workers, and respond appropriately to usual work situations due to her "severe incapacitating headaches" occurring multiple times each day "which compromises consistent daily functioning."    Tr. 895.

In the decision, the ALJ accurately summarized Dr. Stoltzfus's opinion and gave his opinion "some weight."    Tr. 24.    The ALJ credited Dr. Stoltzfus's diagnosis of major depressive disorder because it was consistent with other medical evidence, including that from her primary care provider.    However, the ALJ discounted his Dr. Stoltzfus's opinion that Plaintiff has "marked limitations in all areas of social functioning."    Tr. 24.    Because the opinion was contradicted by the opinion of examining physician Thomas W.L. Potter, Ph.D., the ALJ was required to provide specific and legitimate reasons for discounting Dr. Stoltzfus's opinion.    *Ford*, 950 F.3d at 1154; *Bayliss*, 427 F.3d at 1216.    The ALJ has provided two specific and legitimate reasons.

First, the ALJ found that Dr. Stoltfus's opinion premised on Plaintiff's "recitation of the impact of her headaches on her ability to handle environmental factors and interpersonal contact." Tr. 24.    An ALJ may reject the opinion of an examining physician where it is primarily based on a claimant's properly discounted subjective complaints.    *Tommasetti*, 533 F.3d at 1041 (finding ALJ may reject physician's opinion based primarily on claimant's self-reports that have been properly discounted).    As the court discussed above, the ALJ provided specific, clear, and convincing reasons for discounting Plaintiff's testimony, including the severity of her migraine

Page 25  – OPINION AND ORDER

headaches.    At the hearing, Plaintiff testified that she stopped taking any medication for migraines because none had been effective.    Tr. 80.    However, as the ALJ detailed, Plaintiff inconsistently reported to providers that her migraine headaches and tic douloureux substantially diminished and were minimally bothersome after being prescribed gabapentin and oxcarbazepine.    Tr. 753, 756, 806-07, 835, 1267, 1279.    The ALJ's findings are fully supported by substantial evidence in the record.    Based on this inconsistency, the ALJ could reasonably discount Dr. Stoltzfus's opinion.

Second, the ALJ found that Plaintiff's reports of the severity of her migraine headaches were inconsistent with medical evidence.    Inconsistency with objective medical evidence is a specific and legitimate reason to discount a physician's opinion.    *Batson*, 359 F.3d at 1196 (finding ALJ may discredit treating physicians' opinions that are unsupported by objective medical findings or the record as a whole).    The ALJ explained that shortly after Dr. Stoltzfus's evaluation, Plaintiff reported to her physician that her migraine severity was mild, that she was having three to four visual auras per day, and that she did not report any interference with her functioning due to the auras.    Tr. 24.    As the ALJ accurately noted, in December 2017, Plaintiff reported to Dr. White that her migraine headaches were "mild" and she denied any memory loss.    Tr. 1202. Indeed, Dr. White's treatment note reflects that Plaintiff denied having "huge headaches," and instead was having "background headaches" that Dr. White described were "not intractable."    Tr. 1202.    And, in January 2018, Plaintiff described that she was having two-to-five auras a day and a dull headache, not a migraine.    Tr. 1279.    In October 2017, Plaintiff reported to Dr. Davidson that she was experiencing persistent auras that were not intractable.    Tr. 900.    In 2018, Dr. Davidson recommended Depakote for any breakthrough migraines, though the record does not reveal whether Plaintiff was prescribed or took that medication.    Tr. 1284.    Therefore, the ALJ

reasonably could conclude that the medical record is devoid of any indication that the auras described by Plaintiff markedly interfered with all aspects of her social functioning.    Tr. 895.

The ALJ's findings are wholly supported by substantial evidence in the record.    The ALJ reasonably discounted Dr. Stoltzfus's opinion based on its inconsistency with other evidence, and this rationale readily provides a specific and legitimate basis for discounting it.    Again, even if the court were to conclude differently, the ALJ's interpretation is rational and thus must be upheld. *Ford*, 950 F.3d at 1154.

F.    *Cory Maughan, D.O.*

On May 2, 2015, Dr. Maughan completed a neurological examination of Plaintiff.    Tr. 603. Plaintiff reported to Dr. Maughan that she has a tremor disorder and experiences migraine headaches, and they are helped with medication and rest.    Tr. 603.    Plaintiff reported that she also suffers from severe episodes of nausea and vomiting, and wears adult diapers due to frequent bowel movements.    Tr. 603.    Dr. Maughan's evaluation reflects that Plaintiff reported she can perform all household chores and personal hygiene care.    Tr. 604.    On examination, Dr. Maughan noted that Plaintiff transferred easily from the chair to the examination table, sat comfortably, removed her shoes without difficulty, and walked easily to the examination room.    Tr. 604.    Dr. Maughan noted no abnormalities with Plaintiff's gait, tandem walk, toe-heel walk, hopping, squatting, Romberg, rapid alternating of the hands, or finger-to-nose testing.    Tr. 605.    Dr. Maughan found that Plaintiff was able to grip and hold objects securely, could grasp and manipulate large and small objects with the first three digits, and found no diminution of function with repetition, and that sensation to touch and pin were normal in all fingers.    Tr. 606.    Based on his examination, Dr. Maughan opined that Plaintiff had no exertional limitations or postural limitations, and opined that she is limited to occasional handling, fingering, and feeling based on her ongoing tremors, and

Page 27  – OPINION AND ORDER

that she should not work around chemicals, but otherwise had no environmental limitations.    Tr. 607.

In the decision, the ALJ gave "some weight" to Dr. Maughan's opinion of Plaintiff's manipulative limitations.    Tr. 24.    Dr. Maughan's opinion was contradicted by those of Drs. Wiggins and Berner, and the ALJ was required to provide specific and legitimates reasons for discounting his opinion.    The ALJ did so here.

First, the ALJ found that Dr. Maughan's opinion regarding Plaintiff's tremor unsupported by the medical evidence in the record.    As noted previously, the ALJ thoroughly discussed Plaintiff's allegations of tremor and their improvement with medication, and those findings are fully supported by substantial evidence.    As the ALJ accurately noted, Plaintiff reported to Dr. Svoboda that her tremors had diminished substantially on medication, and again reported to Dr. White that her tremor was much improved.    Tr. 753, 774.    Therefore, the ALJ has provided a specific and legitimate basis for partially discounting Dr. Maughan's opinion.    *Batson*, 359 F.3d at 1195.

Second, the ALJ found that Dr. Maughan's manipulative limitations were based on Plaintiff's subjective reports.    An ALJ may discount an examining physician's limitations that are premised on a claimant's properly discounted subjective complaints.    *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014).    This is supported by substantial evidence in the record.    Dr. Maughan's gross and fine motors skills testing results were normal and he based his opinion solely on Plaintiff's subjective reports, a finding largely unchallenged by Plaintiff.    Tr. 607. Accordingly, the ALJ has provided specific and legitimate reasons for discounting Dr. Maughan's opinion.

Plaintiff argues that the ALJ erred by failing to consider a closed period of disability with respect to her tremors.   Plaintiff contends that even if the ALJ properly discounted Dr. Maughan's opinion because her tremors improved, the ALJ should have considered whether she was disabled prior to the date of Dr. Maughan's opinion.   (Pl.'s Br. at 25-26.)   The court disagrees.   As discussed above, the court has concluded that the ALJ did not err in evaluating the opinions of Drs. Ouellette and Svoboda, or of Ms. Solomon, or in evaluating Plaintiff's subjective symptoms. Because the ALJ's non-disability decision is free of harmful legal error and supported by substantial evidence, the ALJ did not err in failing to consider a closed period of disability.   *Yang v. Comm'r Soc. Sec. Admin.*, Case No. 1:19-cv-00890-SAB, 2020 WL 5816575, at *24 (E.D. Cal. Sept. 30, 2020) (holding ALJ did not err in failing to consider closed period of disability and collecting cases holding same).

In summary, the court concludes that the ALJ did not err in evaluating the medical evidence.   The ALJ, as final arbiter of resolving conflicts in the record, carefully reviewed the voluminous and challenging medical record, resolved conflicts in the medical record consistent with governing rules, and meticulously explained the rationale in a lengthy, well-reasoned decision.   Again, even if the court were to conclude otherwise, the ALJ's interpretation of the evidence is rational, supported by substantial evidence in the record as a whole, and therefore must be upheld.   *Garrison*, 759 F.3d at 1010 (providing that where the evidence can reasonably support either affirming or reversing a decision, the court may not substitute it judgment for that of the ALJ).

\ \ \ \ \

III.    <u>The ALJ Did Not Err in Failing to Include Limitations for Plaintiff's Migraines in the RFC</u>

Plaintiff argues that the ALJ erred by failing to include any limitations in the RFC to account for her migraine headaches.  According to Plaintiff, the ALJ should have credited her testimony, and the opinions of Drs. Stoltzfus and White, who opined that Plaintiff suffered limitations that would preclude competitive employment, if credited.  As made clear in this Opinion and Order, the ALJ did not err in rejecting Plaintiff's subjective symptom testimony or the medical evidence concerning her migraines.  Therefore, the RFC properly includes only those limitations credited by the ALJ and supported by substantial evidence in the record.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (providing that ALJ is responsible for resolving conflicts in the medical testimony and translating claimant's impairments into functional limitations); *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001) (holding ALJ did not err in excluding depression from RFC and hypothetical question posed to the vocational expert where ALJ properly discounted claimant's subjective allegations).  The ALJ did not err in failing to include in the RFC additional limitations for Plaintiff's migraines.

*Conclusion*

Based on the foregoing, the Commissioner's final decision is AFFIRMED.  This action is DISMISSED.

IT IS SO ORDERED.

DATED this 23rd day of November, 2020.

_____
JOHN V. ACOSTA
United States Magistrate Judge